UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY KAHLEY,

          Petitioner,

                                  CASE NO. 5:10-CV-12705

v.                          JUDGE JOHN CORBETT O'MEARA

                                  MAGISTRATE JUDGE PAUL J. KOMIVES

STEVEN RIVARD,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Evidence Claims (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                 a. Reference to Polygraph . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                 b. Other Acts Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     E.    *Sentencing Claims (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    *Departure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.    *Blakely* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     F.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 17
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.    REPORT:

A.    *Procedural History*

       1.    Petitioner Larry Kahley is a state prisoner, currently confined at the St. Louis

Correctional Facility in St. Louis, Michigan.

2.    On May 2, 2006, petitioner was convicted of first degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a), following a jury trial in the Allegan County Circuit Court. On June 16, 2006, he was sentenced to a term of 25-75 years' imprisonment.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.    DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHERE THE PROSECUTOR AND PROSECUTORIAL WITNESS TESTIFIED THAT MR. KAHLEY REFUSED A POLYGRAPH EXAMINATION.
>
> II.   DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF OTHER ALLEGED ACTS THAT WERE UNCONNECTED TO THE INSTANT OFFENSE AND IRRELEVANT TO ANY PROPER PURPOSE UNDER MRE 404(B).  US CONST AM XIV.
>
> III.  THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY DEPARTING ABOVE THE STATUTORY SENTENCING GUIDELINE RANGE BASED ON FACTS THAT WERE ALREADY SCORED OR CONSIDERED WITHIN THE SENTENCING GUIDELINES OR BASED ON THE TRIAL COURT'S PERSONAL OPINION.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Kahley*, 277 Mich. App. 182, 744 N.W.2d 194 (2007).

4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Kahley*, 481 Mich. 882, 748 N.W.2d 880 (2008).

5.    Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising a claim that the trial court improperly scored the sentencing guidelines.  The trial court denied the motion based on petitioner's failure to establish

good cause for his failure to raise the claim on direct appeal, as required by Rule 6.508(D)(3). *See People v. Kahley*, No. 05-14553-FC (Allegan County, Mich., Cir. Ct. Mar. 24, 2008). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Kahley*, 486 Mich. 928, 781 N.W.2d 811 (2010); *People v. Kahley*, No. 294202 (Mich. Ct. App. Oct. 23, 2009).[1]

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 8, 2010. As grounds for the writ of habeas corpus, he raises the three claims that he raised on direct appeal, as well as a claim that his sentence violates the *Blakely* rule and that counsel was ineffective for failing to object to his sentence on this basis.

7.     Respondent filed his answer on February 3, 2011. He contends that petitioner's first and fourth claims are barred by petitioner's procedural default in the state courts, and that petitioner's remaining claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the sexual assault of his then four-year-old son. The evidence adduced at trial was accurately summarized in petitioner's brief on direct appeal:

> On February 6, 2006, a Walker hearing [on the voluntariness of petitioner's confession] was conducted [by the trial court]. JP Damveld of the Allegan County Sheriff's Department testified that on December 2, 2005, he interviewed Mr. Kahley in regard to a criminal sexual conduct case regarding Jordan VanBuskirk. Mr. Kahley came to the station voluntarily with his girlfriend for the interview. Damveld testified that Mr. Kahley was not under arrest, signed the Miranda papers and did not appear under the influence of alcohol or drugs.
> Damveld claimed that Mr. Kahley told him that regarding the first incident,

---

[1]In addition, petitioner filed a motion to modify the order of restitution, which the trial court denied. Petitioner appealed this decision to the Michigan Court of Appeals, but did not appeal to the Michigan Supreme Court.

3

he was watching a pornographic movie when one of the children, his then girlfriend's son Jordan VanBuskirk, came into the room. At that point, Damveld stated that Mr. Kahley stopped his story, refused to answer any more questions and was placed into custody and transported to Allegan County Jail.

During a second interview that day, Michigan State Trooper Scott Ernstes conducted his interview with Damveld present. Damveld claimed that Mr. Kahley was re-Mirandized. Mr. Kahley continued his story and told them that after turning off the movie, he called VanBuskirk into the room. Damveld claimed that Mr. Kahley told him that VanBuskirk was interested in the movie, began asking questions and stated he wanted to do the things he saw in the movie. Damveld alleged that Mr. Kahley then admitted to putting VanBuskirk's penis in his mouth.

Damveld also alleged that Mr. Kahley admitted to a similar act with his own son, Brett Kahley. Mr. Kahley wrote a statement as to both incidents. Damveld testified that Mr. Kahley was under arrest before writing his statements and that he never requested an attorney. Damveld admitted that neither interrogation was taped.

Trooper Scott Ernstes testified that he had experience in the investigation and interview of criminal sexual conduct cases and that he interrogated Mr. Kahley. Ernstes stated that no promises or threats were made to Mr. Kahley. Ernstes claimed that Mr. Kahley was very specific regarding VanBuskirk and his son. Mr. Kahley gave them a written statement.

Ernstes claimed that Mr. Kahley was cooperative, calm, cried some and apologized to Damveld for lying. Ernstes stated that Mr. Kahley admitted to both incidents. Ernstes acknowledged that no tape was created of this interrogation even though it was conducted in the video arraignment room.

Mr. Kahley did not testify at the Walker hearing. The trial court ruled that his statements were admissible at trial.

. . . .

[At trial,] Brett Kahley testified that he was six years old at the time of trial and that defendant Larry Kahley was his father. Brett stated that the single incident involved him putting his "wiener" in his father's mouth. He could not remember where it happened. He could not remember when it happened. He could not remember what room of what location it allegedly happened in. Brett admitted that he could not remember.

Trooper Scott Ernstes of the Michigan State Police testified consistently with his Walker hearing testimony. Ernstes alleged that after initially denying everything, Mr. Kahley confessed to the incident with Jordan Van Buskirk then admitted to an incident with his son, Brett. Ernstes acknowledged that there was no audio or video tape of this interrogation.

Officer John Rookus of the Wayland Police Department testified that on November 17, 2005, he was contacted by Barry County Human Services regarding allegations of Mr. Kahley against Jordan VanBuskirk. Rookus stated that he met with Katie VanBuskirk, Jordan's mother, and then set up an appointment for Jordan to be interviewed by a counselor. He had no contact with Mr. Kahley.

Officer JP Damveld of the Wayland Police Department testified consistently

4

with his Walker hearing testimony. In addition, he added that he requested an interview with Mr. Kahley after being contacted by Officer Rookus. Damveld indicated that Mr. Kahley denied any wrongdoing involving Jordan VanBuskirk. Damveld testified that Mr. Kahley refused a polygraph examination at that time.

Katie VanBuskirk testified that she lived with Mr. Kahley in 2004, along with her two sons and Mr. Kahley's son Jordan. She stated that Mr. Kahley moved out in September of that year and that the allegations regarding her son came to light about a year after Mr. Kahley left. VanBuskirk alleged that Jordan told her that Mr. Kahley had him put his penis in Mr. Kahley's mouth. She never spoke with Brett Kahley about any allegations.

At the conclusion of VanBuskirk's testimony, the prosecution rested. The defense then presented an opening statement.

Janet Flowers, Mr. Kahley's mother, testified that Mr. Kahley was never molested as a child and that no charges or incidents ever occurred while he lived with her.

Defendant Larry Kahley testified that he was 25 years old and that in 2004, he was living with Katie VanBuskirk, her two children and his son. Mr. Kahley denied touching or molesting Jordan VanBuskirk or his son. He admitted to going to the police station voluntarily in December 2005 to answer questions and speaking with Officer Damveld. Damveld told him what he was being accused of and Mr. Kahley told him that Katie VanBuskirk had been harassing him after their break up and shortly after he refused her demands he received a call from the police regarding the allegations against Jordan. Mr. Kahley testified that he was arrested at the interview and then interviewed by a second officer.

Mr. Kahley denied any wrongdoings with either Jordan or Brett. He admitted to writing out a statement because he was scared and was told it would go easier for him. He testified that the statement was not true.

Outside the presence of the jury, the prosecution requested to cross-examine Mr. Kahley on an incident that occurred while he was a juvenile. The prosecution wanted to question Mr. Kahley about an incident which occurred when he was 12 or 13 years old and the allegations were that he touched a younger child. The prosecution argued that they wished to impeach Mr. Kahley with this evidence as he had denied ever touching another boy. Over objection, the trial court allowed it.

The prosecution then questioned Mr. Kahley about statements he allegedly made to the officers regarding touching another boy 10 years earlier when Mr. Kahley was a minor. Mr. Kahley did not recall saying that to the officers.

Def.-Appellant's Br. on Appeal, in *People v. Kahley*, No. 271656 (Mich. Ct. App.), at 1-6 (citations

to transcripts omitted).

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

5

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

6

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Evidence Claims (Claims I & II)*

Petitioner first contends that he was denied a fair trial by the introduction of evidence that he refused to take a polygraph test and evidence of other acts of sexual misconduct.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection

8

or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

*a. Reference to Polygraph*

During his examination of Officer Damveld regarding the interrogation of petitioner, the prosecutor asked Damveld whether he had made "any threats or promises towards the defendant at the police station?" Trial Tr., Vol. I, at 111. Damveld responded: "No, I didn't. The only thing I offered him was would he be willing to take a polygraph and he said he would not." *Id*. Defense counsel immediately began to object, and the prosecutor moved on to another matter. *See id*. During cross-examination by the prosecutor, after the prosecutor had requested a side bar conference and in response to no question, petitioner blurted: "Just like I asked for a poly. Did I ever get it? No. I never got my polygraph." *Id*. at 148. The Michigan Court of Appeals concluded that because references to polygraph examinations are absolutely prohibited, "plain error occurred when the officer testified that defendant refused to take a polygraph examination." *Kahley*, 277 Mich. App. at 183, 744 N.W.2d at 196. Nevertheless, the court concluded that the reference was not prejudicial, and that therefore reversal was not required. The court reasoned:

> The reference to defendant's refusal to take a polygraph examination was brief, the prosecutor did not argue that defendant was guilty because he had refused to take a

polygraph examination, defendant himself later testified that he asked to take a polygraph test but was never given one, and defendant confessed to the crime. Under these circumstances, we conclude that the plain error did not affect the outcome of defendant's trial[.]

*Id*. at 184, 744 N.W.2d at 196. This determination was reasonable.[2]

The admissibility of polygraph evidence is generally an issue of state law which does not raise issues of constitutional magnitude, and thus such issues are not cognizable on habeas review. *See Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2002); *Middleton v. Cupp*, 768 F.2d 1083, 1085-86 (9th Cir. 1985); *People v. Perini*, 659 F.2d 730, 734-35 (6th Cir. 1981); *Sheppard v. Maxwell*, 346 F.2d 707, 731-32 (6th Cir. 1965), *rev'd on other grounds*, 384 U.S. 333 (1966). As noted above, the only question is whether the introduction of the evidence was so prejudicial so as to deny petitioner a fair trial. As the court of appeals explained, it was not. The evidence consisted of a single, unsolicited statement from a witness. No other evidence relating to the polygraph was introduced by the prosecutor, nor did the prosecutor make any reference to the issue during closing arguments. In addition, there was significant evidence against petitioner, including the testimony of the victim, the evidence of petitioner's similar sexual assault against his girlfriend's son, and petitioner's confession to the police, testified to by two officers and reduced to writing. In these circumstances, petitioner cannot show that the brief mention of his refusal to take a polygraph examination denied him a fair trial. *See Passino v. Tessmer*, 61 Fed. Appx. 124, 127 (6th Cir. 2003) ("Not only did the question propounded by the prosecutor not request information on the *results* of

---

[2]Respondent argues that petitioner's claim is procedurally defaulted because petitioner did not object to the officer's testimony at trial. It is not clear that this claim is defaulted. First, counsel attempted to object, but the prosecutor immediately moved on. Second, although the Michigan Court of Appeals reviewed this claim only for plain error based on counsel's failure to object, the court in fact found that plain error had occurred. Because the claim is without merit, the Court need not resolve whether the claim is defaulted.

any polygraph examination, the reference to such a test was confined to a single instance and the additional evidence adduced against the petitioner clearly implicated him in the crimes for which he was indicted and ultimately convicted."); *Escobar v. O'Leary*, 943 F.2d 711, 720-21 (7th Cir. 1991). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Other Acts Evidence

Petitioner next contends that he was denied a fair trial by the introduction of other acts evidence. Specifically, petitioner contends that he was denied a fair trial by the evidence of his assault of his girlfriend's son. The Michigan Court of Appeals rejected this claim, concluding that the other acts evidence was admissible under Rule 404(b) to show a common scheme or plan. The court reasoned:

> In the present case, at the time of the sexual assaults, which occurred within a four-month period, the victim and defendant's girlfriend's son were both four years old and under the care and supervision of defendant. Moreover, defendant sexually assaulted the two boys in the same manner. He first rubbed their penises before performing fellatio on the boys. Under these circumstances, the charged act and the uncharged act are sufficiently similar to show that defendant engaged in a common plan or scheme. In addition, because the evidence that defendant sexually abused his girlfriend's son provided the inference that defendant acted in accordance with a common scheme or plan, the evidence was relevant to whether the charged crime occurred.

*Kahley*, 277 Mich. App. at 185, 744 N.W.2d at 197. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in

11

the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001). Here, the evidence of petitioner's prior assault was relevant for the proper purpose of showing petitioner's common scheme in carrying out his assaults. Further, the trial court properly instructed the jury that this evidence could be considered only for this purpose, and that the jury should not use the evidence to convict petitioner because he was a bad person or was guilty of another, uncharged crime. *See* Trial Tr., Vol. II, at 21-22. Because this evidence was relevant for a proper purpose and the jury was properly instructed, and because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," *Bugh*, 329 F.3d at 512, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Sentencing Claims (Claims III & IV)*

In his next two claims, petitioner contends that the trial court erred in departing above the statutory sentencing guidelines range based on facts that were already considered in the guidelines and based on the judge's personal opinion. He also claims that his sentence violates the *Blakely* rule, and that counsel was ineffective for failing to object on this basis. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Departure*

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness

12

in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

      2.   <u>*Blakely*</u>

Finally, petitioner contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted*

13

> *by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id.* at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in

14

*Blakely* and *Booker*.  Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant).  As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence.  The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose

15

a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

16

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. And because *Blakely* is inapplicable, counsel was not ineffective for failing to raise a meritless challenge to petitioner's sentence on the basis of *Blakely*. *See Mihelcich v. Birkett*, No. 2:11–CV–10137, 2011 WL 4360014, at *10 (E.D. Mich. Sept. 19, 2011) (Battani, J.) (citing *Rupert v. Berghuis*, 619 F. Supp. 2d 363, 371 (W.D. Mich.2008)). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a

17

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'"[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

18

     2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claim, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Petitioner's evidentiary claims raise state law issues not cognizable on habeas review, and petitioner has not shown that the alleged evidentiary errors denied him a fair trial. Thus, the resolution of these claims is not reasonably debatable. Likewise, it is clear both that petitioner's guideline departure claim is a state law issue not cognizable on habeas review and that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. Thus, the resolution of petitioner's sentencing claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

G.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/4/12


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on January 4, 2012.

s/Eddrey Butts
Case Manager